**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Earle L. REYNOLDS, Defendant.**
**Cr. No. 11258.**

United States District Court
D. Hawaii.

Aug. 22, 1958.

Louis B. Blissard, U. S. Atty., District of Hawaii, by Sanford J. Langa, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff.

Fong, Miho, Choy & Robinson, Honolulu, Hawaii, of counsel, by Katsugo Miho, Honolulu, Hawaii, for defendant.

McLAUGHLIN, Chief Judge.

Defendant aboard his yacht "Phoenix" was arrested July 2, 1958, by U. S. Coast Guard upon the high seas of the South Pacific for violation of a Regulation of the Atomic Energy Commission (10 CFR, Part 112; 42 U.S.C.A. § 2201(i)) prohibiting U. S. citizens from entering the defined danger area of the high seas during nuclear tests known as the Hardtack Series beginning April 1, 1958, and ending when so announced during said year.

After removing yacht and those aboard from the danger area, the defendant was flown by MATS to Honolulu, and promptly brought before a U. S. Commissioner, who after appropriate proceedings on July 8, 1958, bound him over for grand jury action, and set bond which defendant posted.

Thereafter, on July 21, 1958, defendant appeared with counsel and waived his Constitutional right to an indictment and consented to being charged by Information. Arraignment followed, and time to plead or otherwise move was granted.

On July 28, 1958, defendant by counsel filed a motion to dismiss raising questions of Constitutional and international law, the same being identical with those unsuccessfully raised by defendants in Civil No. 1646, U.S.A. v. Bigelow, and passed on recently by Judge Wiig, also by both the Circuit Court of Appeals for the 9th Circuit and Mr. Justice Douglas in connection with a petition for a stay of injunction.

Upon the same date, defendant asked for and was granted permission upon terms to proceed to mainland United States to raise defense funds, and procure mainland counsel. No word was given of intent to excuse local counsel if mainland counsel was procured. Indeed, the inference was that such counsel would be in addition to local counsel, as in Civil No. 1646, U. S. v. Bigelow, et al.

The August 6th scheduled date for hearing the motion to dismiss arrived, and counsel sought a continuance. It was stated that the defendant had engaged Attorney Joseph L. Rauh, Jr., of Washington, D. C., whom he wished to argue the questions of law alleged to be complicated. The request was denied, and after argument, so was the motion to dismiss. Thereupon, defendant entered a plea of not guilty. Setting for trial was discussed and continued to August 11 at 2:00 p. m. for actual setting.

On August 11th counsel for defendant moved to continue the case for trial until the Washington, D. C., Attorney Rauh could conveniently serve. Amongst the assorted reasons advanced was the claim to the service of the attorney of defendant's choice, Mr. Rauh, and content of an affidavit of counsel saying that when retained by defendant he understood and agreed defendant would engage co-counsel.

The request was denied on August 11, 1958, with reasons assigned, and stating that upon compliance with the local rule, defendant's Washington, D. C., attorney would be welcome. It was observed that defendant's right to counsel of his choice had been exercised, and he was not entitled to a second choice, yet, Mr. Rauh would be welcome, meaning as co-counsel. August 25th was the date set for trial.

On August 18th, defendant by his attorney, filed a second motion for a continuance. It was supported by an affidavit by Attorney Rauh that he would be busy preparing during the week of August 25th a brief for the Supreme Court due to go to the printers September 1st; that in the prior week he had scheduled a vacation, and in subsequent weeks he had professional dates and could not get to Hawaii to serve defendant until Sept. 24th. It was represented again that Mr. Rauh's services were needed on the complicated legal issues of constitutional and international law. It was noted those issues had been raised and passed on. It was further observed that Mr. Rauh could adjust his vacation and plans for preparing a brief to meet the set trial date, and repeated that the defendant was not as of right allowed two choices of counsel. Action on the separate petition by Attorney Rauh to be allowed to appear in this case as counsel for defendant was deferred as such are not processed in absentia nor until the local rule is fulfilled.

On Thursday, August 21st, at 4:05, defendant filed a "Notice of Discharge" of counsel.

On Friday morning, said counsel sought permission of the Court to withdraw. Defendant addressed the Court saying he had discharged Mr. Miho and his firm as a matter of principle, deeming it unfair to make him represent him at the trial when he intended only to use his services as to preliminaries. Defendant stated he was not dissatisfied with counsel but had acted upon said principle only. Defendant further said the attorney of his choice was Mr. Rauh of Washington, D. C. and as the Court wouldn't reset the trial to meet Mr. Rauh's convenience, he, defendant, would not ask again for a continuance, but would act as his own attorney. Mr. Miho advised the Court that aside from having an attack of ulcers, he was prepared to go to trial Monday, August 25th.

### Ruling

The desire of the defendant to proceed according to principles that he believes to be controlling is perhaps understandable and admirable, but despite his being a college professor he is unfamiliar with the principles of law that are controlling in circumstances such as this. I reiterate again that the facts are that Fong, Miho and Robinson, through Katsugo Miho, entered a general appearance for this defendant and at no time was permission sought or granted to appear specially or for limited purposes.

The Court, in common with other members of the public is, of course, aware that at one time the defendant has sought from afar renowned counsel. To that, of course, there is no objection if such counsel can accommodate himself to the Court's calendar and rules. I am aware of the defendant seeking the services of Adlai Stevenson, wiring him seeking his services while he was in Moscow, Russia. According to the press, Mr. Stevenson replied that he was not able to accept the defendant's case.

Later the defendant obtained the permission of the Court to go to the mainland to raise finances and engage counsel. At no time was there any intimation

given to the Court that if additional counsel were secured that Fong, Miho and Robinson would seek to be excused from this litigation.

It now appears that Mr. Reynolds had secured the services of eminent counsel resident in Washington, D. C.: Mr. Rauh. Mr. Rauh, however, seems unable to so adjust his professional and personal commitments as to be here at that time set for trial of this case. In all cases, counsel from abroad would, of course, have to fulfill the requirements with the local rules as to admission in order to proceed even in a specific case and for the limited purposes of said litigation. I have no reason, incidentally, to believe that Mr. Rauh could not comply with the rules pertaining to this subject. And, if he could accommodate himself to the Court's calendar, I would be happy to see him associated in this litigation with Mr. Miho.

The defendant has sought on two occasions to obtain continuance of the trial date in order to accommodate Mr. Rauh. The same have been denied and while it is now said that this present maneuver is not by way of seeking a continuance a third time and at the 11th hour, there are certain overtones in this direction. The Court has an awareness of the fact that not only is the defendant under the Sixth Amendment, entitled to a speedy trial, but this litigation has been in the judicial machinery since July 24th and thereafter was speeded up by the defendant's own action of waiving indictment, thus indicating he was desirous of promptly facing the charge and in going, if need be, to trial. The Court in consideration of that and other calendar factors set the case for trial August 25th. As to the Sixth Amendment, while it be voiced and stated in terms of the defendant being entitled to a speedy trial, it is not exclusively a defendant's right, for the Court is obliged under the amendment to see to it that matters of this nature are speedily processed and given preference on the Court's calendar.

There are other considerations, too, that everyone knows about, but perhaps it might well be voiced at this time if there be any doubt about the matter and that is this isn't the only case in this Court that is deserving of the Court's time and attention. The Court has other obligations to other litigants and that obligation is dual in nature from now to November in view of Judge Wiig's absence. My own calendar for the month of September involves four separate trials which would preclude, as matters now stand, scheduling this case, as requested, for September.

■ To come now directly to the matter at hand, concerning Counsel's request to be allowed to withdraw, let me observe initially that I have never heretofore had come to my attention a formal Notice of Discharge, as a basis of forcing the Court to allow an 11th hour withdrawal of counsel. I know not what the precedent for such be. It may have happened elsewhere, but not in my experience. The matter of the attorney-client relationship, so long as no one else is involved, is entirely a private matter and under such circumstances a client may have an absolute right to discharge counsel. But this is not one of those circumstances for, having counsel who entered a general appearance in a criminal matter scheduled for trial, to endeavor on the eve of trial to discharge counsel and to proceed as one's own counsel, because he can't have his own way, is to endeavor to exercise a non-existent right. The right of discharging counsel under these circumstances at best is a qualified right —qualified by the public interest and the Court's control of its calendar.

The defendant asserts that his reason for discharging or purporting to discharge counsel was for the purpose of aiding and assisting his attorney to secure the Court's permission to allow counsel to withdraw solely and exclusively for the reason that defendant feels he has placed too much of a burden, indeed, an impossible burden on Mr. Miho and his firm for defendant personally understood he was only engaging Mr. Miho and his firm to handle purely pre-

liminary matters not touching the law or the merits.

As previously noted, that was never told the Court (or approved by the Court) until such time as it became apparent that Mr. Reynolds could not obtain his own way, of causing the Court to accommodate its calendar to mainland counsel's.

Defendant states that there is no dissatisfaction with the competency or skill of counsel and his firm with respect to this litigation. Nor is there any personal dissatisfaction existing in the relationship of the attorney and client. It is simply, as stated on the record this morning by Mr. Reynolds, as a matter of principle—of fairness—he thinks he should relieve Mr. Miho of his obligation to represent him. But, Mr. Miho well knows that he, in addition to his obligation to his client, is obligated to the Court and to that end he has sought the Court's approval of withdrawal.

On the facts as they exist, I am not going to and do not grant the request for withdrawal of counsel. The facts do not warrant it, coming as it does on the eve of trial, and for other reasons recited in the full awareness of the fact that a defendant under some circumstances has a right to represent himself but I do not deem the context in which this issue arises to be one where he can now exercise that right. He will be better served by having counsel and counsel has indicated that he is ready to proceed as scheduled and thus he will.

On Monday, August 25th, when the case was called for trial, Mr. Miho again asked to be excused. The request was denied. The defendant arose and said Mr. Miho wasn't his attorney, that the attorney of his choice was Mr. Rauh of Washington, D. C., and as he couldn't be present, requested a continuance of the trial for three to four weeks. This was denied also as already ruled upon. A jury was selected, and the case went to trial. During the two day trial Mr. Miho represented the defendant. The trial pro-

ceeded without incident, save for defendant's several requests during it, announced in the jury's presence, to address the Court. These were denied. Defendant did not testify nor introduce any evidence. The jury, on August 26th, convicted the defendant.